IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG 3 1 2007

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | | |
|---|---|---|
| HAROLD HARRISON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:06-CV-424-A |
| | § | |
| CARROLL INDEPENDENT SCHOOL | § | |
| DISTRICT, ET AL., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
and
ORDER

On July 6, 2007, defendants, Carroll Independent School

District ("CISD"), Daniel Presley ("Presley"), and Ronnie Tipps

("Tipps"), each filed a summary judgment motion (collectively,

"the Motions") on all claims asserted by plaintiff, Harold

Harrison ("Harrison"), in this suit. Having considered the

Motions, the responses, the replies, the summary judgment

evidence, and the applicable legal authorities, the court

concludes that the Motions should be granted.[1]

---

[1]Also pending are defendants' objections to and motion to strike
plaintiff's summary judgment evidence, plaintiff's motion in limine
and brief in support, and defendants' motion to compel or in the
alternative to strike. To the extent that these motions are not
explicitly granted or denied by this opinion and order, they are
dismissed as moot.

I.

Plaintiff's Claims

On June 12, 2007, Harrison filed his second amended complaint. He alleges that in 2004 he was not promoted by CISD because of his race.[2] Harrison asserts claims, against all three defendants, through 42 U.S.C. § 1983, for violations of 42 U.S.C. § 1981 and the equal protection clause of the Fourteenth Amendment. He brings additional claims against CISD under 42 U.S.C. § 2000e ("Title VII") and the Texas Labor Code § 21.051.

II.

The Motions for Summary Judgment

Presley and Tipps each maintains that he is entitled to qualified immunity because Harrison cannot demonstrate the violation of a clearly established constitutional or federally protected right. In the alternative, each argues that qualified immunity applies because his conduct was, in any event, objectively reasonable.

---

[2]Harrison seems to be complaining in his second amended complaint of the failure of CSID to promote him in 2001. CISD responds to that apparent claim by pointing out in its brief in support of its motion for summary judgment that it clearly is barred by the statute of limitations. Harrison says nothing in his response to the motion for summary judgment to indicate that he is continuing to pursue a claim based on events occurring in 2001. Therefore, the court assumes that Harrison has abandoned that claim, if he ever intended to make it. In any event, it would be barred by the statute of limitations.

All defendants maintain that they are entitled to summary judgment on all of Harrison's race discrimination claims under federal and state law because (a) Harrison has failed to adduce evidence of the fourth element of a prima facie discrimination claim,[3] and (b), even if he had, CISD had a legitimate nondiscriminatory reason for not promoting Harrison, and Harrison has failed to adduce any evidence of pretext. CISD further argues that Harrison has failed to adduce any evidence of constructive discharge, and that any alleged violation of Harrison's rights was not the result of any policy, custom, or practice of CISD.

III.

Facts

The following facts are established without dispute in the summary judgment record:

Harrison, an African-American, began his employment with CISD in 1999 as a special education teacher and coach. Presley, principal of Carroll Senior High School, interviewed Harrison for

---

[3]Harrison could prove Title VII discrimination based on direct evidence. See, e.g., Lexington v. Gap, Inc., 333 F.3d 572, 578 (5th Cir. 2003). However, Harrison does not respond to the Motions with any suggestion that he has any direct evidence of discrimination. Therefore the court infers that Harrison concedes that there is no direct evidence.

this position in July of 1999. Presley was initially hired as an assistant coach in two sports, football and freshman boys basketball.[4]   During the spring of 2000, Harrison told Presley he no longer wanted to coach football. For the 2000-2001 school year, Presley had Harrison assigned as an assistant coach in both track and varsity girls basketball. Harrison was an assistant coach for the varsity girls basketball team at CISD from May 2000 to June 2004.

In the spring of 2001, the head coach of the girls varsity basketball team gave notice of her resignation. Bob Ledbetter ("Ledbetter"), who was the athletic director at that time, recommended Angela Drews ("Drews") for the opening. At the time of this recommendation, Drews was the head coach of the girls varsity track team and the head coach of the girls freshman basketball team. Drews's move to head coach was a lateral move, so CISD was not required to advertise the opening or conduct interviews. Harrison did not submit a written application for the position of head coach of varsity girls basketball at this

---

[4]The parties disagree as to whether Harrison was hired as a part-time coach or a full-time coach.  Compare Pl.'s App. at 1, with Defs.' App. at 54.  This fact is not material to any of the issues asserted, and, in any event, Harrison ultimately received the full-time coaching stipend of $3,500.00 for the 1999-2000 school year, and his employment records were updated to indicate he was a full-time coach.  See Defs.' App. at 55.

time.  While he was still employed by CISD, Harrison did not complain to any school district official that he had been discriminated against on the basis of race when he was not selected for that position.

Drews gave notice of resignation as head coach for the varsity girls basketball team in 2004, effective at the end of the 2003-2004 school year.  Tipps, who was athletic director at that time, was charged with filling the vacancy.  Tipps formed an interview committee to screen and interview applicants for the job.  The committee consisted of Tipps, Presley, principal Robin Ryan ("Ryan"), coach Wyvonne Walling ("Walling"), and coach Nicole Gilley ("Gilley").  The hiring decision rested with Tipps, Presley, and Ryan.  The interview committee selected nine candidates, including Harrison, for interviews.

The job opening was advertised on CISD's website.  The listing provided that head coaching experience was not a prerequisite for applying.  Before the interviews began, Tipps prepared a list of questions to be asked of the candidates, which was approved by CISD's chief personnel officer, Derek Citty ("Citty").  Citty advised Tipps that the interview committee must follow the same procedures for each interview.  The committee scheduled interviews on April 14 and 16, 2004.

Harrison's interview on April 14, 2004, began late because Presley and Ryan were tending to another matter, but the interview was not cut short. Harrison did not ask Presley or Ryan why they had been late or request more time or a rescheduled interview. His interview was conducted in the same manner as those of the other eight candidates, with the committee asking Harrison the same questions that it asked the other eight candidates.

After interviewing the nine candidates, the interview committee met to discuss the candidates and determined that varsity head coaching experience was an important criteria, necessary for the coaching position. Laura Meinzer ("Meinzer"), a Caucasian, emerged as the interview committee's top choice. Meinzer had ten years of basketball coaching experience, four years of varsity girls basketball head coaching experience, she was coach of the year in 2001, and her teams had had success at both the district and regional levels. Meinzer ultimately withdrew from consideration, so no hiring recommendation form recommending her to the board of trustees was ever prepared or submitted.

After Meinzer withdrew from consideration, Tipps, Presley, and Ryan discussed the possibility of Gilley becoming the head

coach. When Citty learned of this, he expressed his concerns to Tipps and Presley about Gilley entering the interview process. Gilley, a Caucasian, had ten years of basketball coaching experience and two years of varsity girls track head coaching experience. On April 25 or 26, 2004, Presley, Tipps, and Ryan asked Gilley if she would be interested in the position. Although she initially expressed interest, in early May of 2004 Gilley told Tipps and Citty that she was no longer interested. Accordingly, Gilley was not presented to the board of trustees for approval.

In April or May of 2004, Harrison learned the position had been offered to Gilley and asked Presley why he had not been selected. Presley told Harrison that the committee did not feel that Harrison was the best candidate for the position. At that time, Harrison had no varsity head coaching experience in any sport. As of 2007, Harrison had eighteen years of basketball coaching experience. Presley referred Harrison to Tipps for more information. Tipps did not feel that Harrison was ready for the head coaching job. Tipps told Harrison that earlier in his career he had to leave one school for another in order to become a head coach.

Tipps, who had supervised Harrison for two years when Harrison was interviewed, was familiar with Harrison's coaching style. He felt that Harrison was not ready to make the step to head coach before he even interviewed him, but Tipps allowed Harrison to be interviewed because he felt that the experience of being interviewed by a committee would provide Harrison with invaluable experience.

When Gilley declined, Tipps, Presley, and Ryan decided that Johnny Hodge ("Hodge") was the best candidate for the position. Hodge, a Caucasian, had seven years of basketball experience, three years of experience as head coach of a varsity girls basketball team, and his teams had had success at the district, area, regional, and state levels. Hodge was coach of the year in the 2002-2003 academic year and then again in 2003-2004. On June 7, 2004, the hiring of Hodge as varsity girls head basketball coach was approved by the board of trustees; however, when he was so informed, Hodge told Tipps he was no longer interested in the job.

Shortly after Hodge declined the position, Tipps, Presley, and Ryan interviewed a tenth candidate, Randy Sherman ("Sherman"), for the position. Sherman, a Caucasian, had nine years of basketball coaching experience and seven years of

varsity girls basketball head coaching experience. He had experienced success at the district and regional levels, and had been selected as coach of the year four times. The board of trustees approved the hiring of Sherman on June 21, 2004.

By letter of June 22, 2004, Harrison resigned from CISD. At his exit interview, Harrison did not mention anything about racial discrimination or hostile work environment. Harrison was never demoted while he was employed by CISD. The work environment at CISD was not discriminatory during Harrison's term of employment. His salary was never reduced during his employment with CISD, and he never had a reduction in job responsibilities. Harrison was never reassigned during his employment with CISD, nor was he ever badgered, harassed, or humiliated during his employment with CISD. He never filed a grievance or complained about discrimination or hostile work environment during his employment with CISD. Harrison never told Presley, Tipps, or Citty that he felt he had been a victim of racial discrimination.

Harrison thereafter filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). CISD listed "lack of experience as a head basketball coach" when the EEOC inquired as

to why Harrison was not selected for the position of head coach of varsity girls basketball.

## Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. <u>Anderson</u>, 477 U.S. at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the nonmoving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the nonmoving party must do more than merely show that there is some metaphysical doubt as to the material facts. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth

specific facts showing a genuine issue for trial. <u>Anderson</u>, 477
U.S. at 256. To meet this burden, the nonmovant must "identify
specific evidence in the record and articulate the 'precise
manner' in which that evidence support[s] [its] claim[s]."
<u>Forsyth v. Barr</u>, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is
material only if its resolution could affect the outcome of the
action. <u>Anderson</u>, 477 U.S. at 428. Unsupported allegations,
conclusory in nature, are insufficient to defeat a proper motion
for summary judgment. <u>Simmons v. Lyons</u>, 746 F.2d 265, 269 (5th
Cir. 1984).

V.

<u>Analysis</u>

A. <u>Qualified Immunity</u>.

In their performance of discretionary functions, generally
government officials are granted a qualified immunity, <u>Wilson v.
Layne</u>, 526 U.S. 603, 609 (1999), which shields officials from
liability for civil damages "insofar as their conduct does not
violate clearly established statutory or constitutional rights of
which a reasonable person would have known," <u>Harlow v.
Fitzgerald</u>, 457 U.S. 800, 818 (1982). A state official
exercising discretionary authority will be shielded from personal
liability "unless at the time and under the circumstances of the

11

challenged conduct all reasonable officials would have realized that it was proscribed by the federal law on which the suit is founded." Pierce v. Smith, 117 F.3d 866, 871 (5th Cir. 1997). Claims brought under 42 U.S.C. § 1981 or 42 U.S.C. § 1983 are subject to the defense of qualified immunity. Foley v. Univ. of Houston Sys., 355 F.3d 333, 338 (5th Cir. 2003) (§ 1981); Morin v. Caire, 77 F.3d 116, 120 (5th Cir. 1996) (§ 1983).

When assessing the defense of qualified immunity, the court conducts a bifurcated analysis. Collins v. Ainsworth, 382 F.3d 529, 537 (5th Cir. 2004) (citing Bazan ex rel. Bazan v. Hidalgo County, 246 F.3d 481, 490 (5th Cir. 2001)). First, the court must determine if the claimant has alleged that the official violated clearly established constitutional or statutory rights of the claimant. Michalik v. Hermann, 422 F.3d 252, 257 (5th Cir. 2005). See also Collins, 382 F.3d at 537. If the claimant has alleged such a violation, the court must then consider "whether the official's conduct was objectively reasonable under the law at the time of the incident." Michalik, 422 F.3d at 258. See also Harlow, 457 U.S. at 819; Collins, 382 F.3d at 537.

The first step of the qualified immunity analysis, which focuses on the state of the law at the time of the complained conduct, involves a higher level of generality than the second

12

step.  <u>Pierce</u>, 117 F.3d at 872.  The second step of the analysis
includes consideration of "the particulars of the challenged
conduct and/or of the factual setting in which it took place."
<u>Id.</u>

1.  <u>Allegation of a Clearly Established Right</u>.

Harrison has alleged the violation of a clearly established
right, thus satisfying the first prong of the qualified immunity
analysis.  The first prong requires Harrison to <u>allege</u> (not
establish or prove) that Presley and Tipps violated his clearly
established constitutional or statutory rights.  <u>See</u> <u>Michalik</u>,
422 F.3d at 257; <u>Pierce</u>, 117 F.3d at 872.[5]  The question is
whether the particular rights allegedly violated are clearly

────────────────

[5]Presley and Tipps contend that the first prong of the qualified
immunity analysis should be subdivided into three questions,
specifically, "(1) whether a constitution violation is <u>alleged</u>; (2)
whether the law regarding the alleged violation was clearly
established at the time of the alleged violation; <u>and</u> (3) whether the
record shows that the violation <u>occurred</u>."  Presley's Br. at 13;
Tipps's Br. at 12).  This analysis, drawn from the Eleventh Circuit in
<u>Rich v. Dollar</u>, 841 F.2d 1558, 1563 (11th Cir. 1988), unnecessarily
considers, under the first prong of the qualified immunity analysis,
whether the record shows that a violation occurred.  The court is
obligated to follow the analysis prescribed by the <u>Pierce</u> case, where
the particulars of the challenged conduct and of the factual
setting in which it took place are considered under the second
prong, objective reasonableness.  The inquiry under the first prong is
limited to a general consideration of the state of the law.  <u>See</u>
<u>Pierce</u>, 117 F.3d at 872.  This approach is consistent with other Fifth
Circuit decisions.  <u>See</u>, <u>e.g.</u>, <u>Thompson v. Upshur County</u>, 245 F.3d
447, 456-57 (5th Cir. 2001).

established, not whether Harrison's allegations clearly establish the violation of those particular rights. See Pierce, 117 F.3d at 872. See also Thompson v. Upshur County, 245 F.3d 447, 457 (5th Cir. 2001) ("Unlike the first step, the step two inquiry applies the law that was clearly established at the time of the alleged violation.").

Presley and Tipps note that against them Harrison "alleges that he has been discriminated against on the basis of race in violation of 42 U.S.C. § 1981 and the Equal Protection Clause of the Fourteenth Amendment." See Presley's Br. at 4; Tipps's Br. at 3. The law is settled that a state employee can assert a § 1981 claim against a supervisor in his individual capacity. See Felton v. Polles, 315 F.3d 470, 480-83 (5th Cir. 2002) (describing a § 1981 cause of action and the relevant pleading requirements).[6] Likewise, a claim for relief under 42 U.S.C. § 1983 for violations of the equal protection clause of the Fourteenth Amendment is clearly established. See, e.g., Washington v. Davis, 426 U.S. 229 (1976); Larry v. White, 929 F.2d 206 (5th Cir. 1991). Thus Harrison has satisfied the first

---

[6]The court does not assess whether Harrison has satisfied the pleading requirements discussed in Felton because neither Presley nor Tipps has made an argument to the contrary.

14

prong of qualified immunity.  See Michalik, 422 F.3d at 257;

Pierce, 117 F.3d at 872.

    2.    Objective Reasonableness.

    Harrison has not raised a genuine issue of material fact

under the objective reasonableness prong of the qualified

immunity analysis.  Under the second prong, the question for the

court is "whether reasonably competent [officials] would have

known that their actions violated law which was clearly

established at the time of the disputed action."  Collins, 382

F.3d at 537.  "Even if a defendant's conduct actually violates a

plaintiff's constitutional right, the defendant is entitled to

qualified immunity if the conduct was objectively reasonable."

Duckett v. City of Cedar Park, 950 F.2d 272, 280 (5th Cir. 1992)

(citing Pfannstiel v. City of Marion, 918 F.2d 1178, 1183 (5th

Cir. 1990)).  "[B]ecause the issue is one of *objective*

reasonableness in respect to whether the challenged action

violated the constitutional provision sued on, the defendant's

subjective motivation and subjective belief as to the lawfulness

of his conduct or what facts justified it are irrelevant."

Pierce, 117 F.3d at 871 n.5 (citing Anderson v. Creighton, 483

U.S. 635, 641 (1987) (emphasis in original).  "A 'defendant's

acts are . . . objectively reasonable unless *all* reasonable

officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff.'" Felton, 315 F.3d at 478 (quoting Thompson, 245 F.3d at 457) (emphasis in original). If officials of reasonable competence could disagree on the issue, immunity should be granted. See Malley v. Briggs, 475 U.S. 335, 341 (1986).

With the foregoing in mind, the court reviews the summary judgment record in the light most favorable to the plaintiff to ascertain the objective reasonableness of the defendants' actions. See Behrens v. Pelletier, 516 U.S. 299, 309 (1996); Duckett, 950 F.2d at 280. "The court must highlight evidence that, if interpreted in the light most favorable to the plaintiffs, identifies conduct by the defendant[s] that violated clearly established law." Castillo v. City of Weslaco, 369 F.3d 504, 506 (5th Cir. 2004).

Presley and Tipps note that the interview committee, of which they were both members, determined that varsity head coaching experience was an important and necessary criteria for the coaching position. Defs.' App. at 58-59, 90. This decision eliminated Harrison from contention, and led the committee to consider Meinzer, Gilley, Hodge, and Sherman for the position.

The decision did not violate Harrison's rights; and, even if officials of reasonable competence could disagree as to whether it did, Presley and Tipps would be entitled to summary judgment under the qualified immunity standard.  See Malley, 475 U.S. at 341.  To defeat summary judgment on qualified immunity, Harrison would have to establish that all reasonable officials in the circumstances of Presley and Tipps would have then known that the decision to require varsity head coaching experience violated the United States constitution or the federal statutes as alleged by Harrison.  Felton, 315 F.3d at 478.

Harrison never addresses the issue of objective reasonableness.[7]  He simply enumerates, by bullet point, what he considers to be "contradictions and nonsensical statements." Pl.'s Br. in Opp. to Mot. of Presley & Tipps at 8.  Harrison takes issue with Tipps's policy of giving all CISD coaches an interview, whether Sherman's or Gilley's interviews were conducted exactly like his was, and whether he was advised that

---

[7]Harrison does provide some briefing under the heading "Plaintiff has established that Tipps's and Presley's conduct was not objectively reasonable."  See Pl.'s Br. in Opp. to Mot. of Presley & Tipps at 8. However, in this section, Harrison fails to address the applicable legal standard, stating, without citing any authority to support the proposition, "[t]herefore, if the law was clearly established, then there is no qualified immunity."  Id.

he might have to leave CISD to become a head coach.  See Pl.'s
Br. in Opp. to Mot. of Presley & Tipps at 8-11.  However,
Harrison does not explain how any of the so-called contradictions
and nonsensical statements raise a fact issue as to whether all
reasonable officials in the circumstances of Presley and Tipps
would have known that their conduct violated Harrison's rights.
Harrison has thus failed to raise a genuine issue of material
fact on the defense of qualified immunity as to either Presley or
Tipps.  Each is entitled to summary judgment for that reason.
See Malley, 475 U.S. at 341; Felton, 315 F.3d at 478.

B.    Substantively the Race Discrimination Claims are
      Without Merit.

      The court analyzes the substance of Harrison's racial
discrimination claims collectively under the Title VII rubric.[8]

---

[8]Harrison brings federal race discrimination claims under Title
VII, and, through 42 U.S.C. § 1983, based on the equal protection
clause of the Fourteenth Amendment and 42 U.S.C. § 1981.  Each of
these claims is properly considered under the Title VII framework
because each requires the same proof to establish liability.  See,
e.g., Wallace v. Texas Tech Univ., 80 F.3d 1042, 1047-48 (5th Cir.
1996) (Title VII, 42 U.S.C. § 1983, and 42 U.S.C. § 1981); Byers v.
Dallas Morning News, Inc., 209 F.3d 419, 422 n.1 (5th Cir. 2000)
(Title VII and 42 U.S.C. § 1981).

      Harrison's state law race discrimination claim is based on the
Texas Commission on Human Rights Act, Texas Labor Code § 21.051.  This
claim is also properly considered under the Title VII framework.  See
Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 403-04 n.2 (5th
Cir. 1999) ("When used as parallel causes of action, Title VII and
                                                  (continued...)

Title VII prohibits an employer from adversely affecting the status of an employee because of the employee's race. 42 U.S.C. § 2000e-2(a)(1) (2006).

Race discrimination cases such as this one, based on circumstantial evidence, are subject to the <u>McDonnell Douglas</u>[9] burden-shifting analysis. <u>Davis v. Dallas Area Rapid Transit</u>, 383 F.3d 309, 316-17 (5th Cir. 2004). To survive summary judgment under that analysis:

> [T]he plaintiff must first present evidence of a prima facie case of discrimination . . . . If the plaintiff presents a prima facie case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action . . . . If the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination.

<u>Id.</u> at 317 (citation omitted).

An employee establishes a prima facie case of race discrimination in a failure to promote case by demonstrating that (1) he is a member of the protected class; (2) he sought and was

---

[8](...continued)
section 1981 require the same proof to establish liability . . . [T]he law governing claims under the TCHRA and Title VII is identical.").

[9]<u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

qualified for the position; (3) he was rejected for the position; and (4) the defendant continued to seek, or promoted, applicants with qualifications no greater than the plaintiff's. Davis, 383 F.3d at 317 (citing Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 354-55 (5th Cir.2001)). See also Haynes v. Pennzoil Co., 207 F.3d 296, 300 (5th Cir. 2000). Once the prima facie case is established, the defendant can rebut the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for its actions. Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 404 (5th Cir. 1999). At this point, the burden on the defendant is only one of production, not persuasion; no credibility assessments are involved. Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000). If the defendant carries its burden, the inference of discrimination created by the prima facie case disappears, and the plaintiff must establish that the proffered reasons are pretextual. Id. "Once a Title VII case reaches the pretext stage, the only question on summary judgment is whether there is a conflict in substantial evidence to create a jury question regarding discrimination." Shackelford, 190 F.3d at 404 (citing Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 993 (5th Cir. 1996)).

Conceding that Harrison has established the first three elements of his prima facie case, defendants contend that Harrison has failed to establish that they continued to seek or promote applicants with qualifications no greater than Harrison's. See Reply Br. of CISD at 5. Defendants point out that the evidence shows that the qualifications of each applicant that was sought or promoted exceeded those of Harrison. Each of the candidates that was offered the job had varsity head coaching experience, while Harrison had none.

Harrison jumps right into the pretext analysis, glossing over the fourth element of a prima facie case, simply stating, "CISD rejected [Harrison] and promoted applicant's with [Harrison's] qualifications," citing to Harrison's own affidavit for this proposition. Pl.'s Br. in Opp. to Mot. of CISD at 8. It is well established that "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 343 (5th Cir. 2007) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)). Thus, defendants are entitled to summary judgment on Harrison's discrimination claims because Harrison has failed to raise a

genuine issue of material fact with respect to the fourth element.

Even if Harrison had raised a fact issue as to the fourth element, defendants nevertheless would be entitled to summary judgment because they have offered a legitimate nondiscriminatory reason for not promoting Harrison; and, Harrison has not raised a genuine issue of material fact that the reason was pretext for discrimination. See Russell, 235 F.3d at 222. Defendants' reason for not promoting Harrison is that he was not the best qualified candidate. Each candidate who was offered the position had varsity head coaching experience and had run successful sports teams at the varsity level, while Harrison had no varsity head coaching experience. See Defs.' App. at 60, 63-64, 90, 94-95. To prove pretext, Harrison would have to show "*both* that the reason [given by the employer for the action taken] was false, *and* that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (emphasis in original). Harrison does not dispute that the other candidates had varsity head coaching experience and success at the varsity level. He fails to raise an issue of fact with respect to the truthfulness,

vel non, of defendants' stated reason for his non-promotion.[10]
There is no evidence that the stated reason was pretext for
racial discrimination.

Harrison unsuccessfully attempts to create a fact issue by
noting that the job description posted for the head coaching
position did not include head coaching experience as a
requirement for applying. Pl.'s Br. in Opp. to Mot. of CISD at
10. However, the content of the job posting, detailing which
applicants were initially eligible to apply, would not prevent
the interview committee from later deciding that successful head
coaching experience would be a determining factor.
Uncontroverted evidence indicates that this is exactly what the
committee decided. See Defs.' App. at 58, 90.

---

[10]Plaintiff contends that this is not a specific enough
articulation to meet the defendant's burden, citing Patrick v. Ridge,
394 F.3d 311, 316-19 (5th Cir. 2004). The Patrick court held that an
employer's assertion that the plaintiff was not "sufficiently suited
for the position" was not a specific enough articulation to meet the
defendant's burden of stating a legitimate rationale for its
employment action. Harrison notes that the court concluded that it
could ignore any reason that logically could not be the real reason.
Id. at 318. Harrison's reliance on Patrick is misplaced. Lack of
successful head coaching experience is a specific articulation of
defendant's rationale. See id. ("We acknowledge that choosing some
other candidate because he is the best-qualified individual for the
job is generally a legitimate, nondiscriminatory reason for an adverse
employment decision.").

In his attempt to show pretext, Harrison contends he was "'pre-screened' out of contention for the position [of head coach of varsity girls basketball] because Superintendent Mathews told Derek Citty that he did not want an African-American in the position." Pl.'s Resp. to Mot. of CISD at 5. This allegation comes from the declaration of Stephen Kaminski ("Kaminski"). See Pl.'s App. at 67. Kaminski states that "Derek Citty called me back and told me that . . . Gary S. Mathews, the then superintendent of Carroll Independent School District, did not want an African American [as a varsity girls head basketball coach]." Id. This is at least double-hearsay. See Fed. R. Evid. 805. Defendants have properly raised this objection. See Reply Br. of CISD at 10; Defs.' Objs. to and Mot. to Strike Pl.'s Summ. J. Evid. at 1-3. As double-hearsay, this statement from Kaminski's declaration is not proper summary judgment evidence. Fed. R. Civ. P. 56(e); Warfield v. Byron, 436 F.3d 551, 559 (5th Cir. 2006).

For each of the foregoing reasons, all defendants are entitled to summary judgment on Harrison's race discrimination claims.

C.  Constructive Discharge.

Harrison also alleges that CISD's actions in 2004 amounted
to a constructive discharge.  Pl.'s Second Am. Compl. ¶ 36.
Constructive discharge occurs when an employee quits his job
under circumstances that are treated as an involuntary
termination of employment.  Haley v. Alliance Compressor LLC, 391
F.3d 644, 649 (5th Cir. 2004).  The Fifth Circuit has explained:

> The general rule is that if the employer deliberately
> makes an employee's working conditions so intolerable
> that the employee is forced into an involuntary
> resignation, then the employer has encompassed a
> constructive discharge and is as liable for any illegal
> conduct involved therein as if it had formally
> discharged the aggrieved employee.

Jurgens v. EEOC, 903 F.2d 386, 390 (5th Cir. 1990) (citation
omitted).  "A failure to promote does not in and of itself
suffice to result in a constructive discharge."  Boze v.
Branstetter, 912 F.2d 801, 805 (5th Cir. 1990).  See also Brown
v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001).

The constructive discharge inquiry is fact-specific, but the
court will consider the following factors, singly or in
combination if they exist: (1) demotion; (2) reduction in salary;
(3) reduction in job responsibilities; (4) reassignment to menial
or degrading work; (5) reassignment to work under a younger or
less experienced/qualified supervisor; (6) badgering, harassment,

or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. Haley, 391 F.3d at 649-50. This test is objective, determining whether a reasonable person in the plaintiff's shoes would have felt compelled to resign. Id. (citing Barrow v. New Orleans S.S. Ass'n, 10 F.3d 292, 297 n.19 (5th Cir. 1994)). The resigning employee bears the burden to prove constructive discharge. Jurgens, 903 F.2d at 390-91.

The mere fact that Harrison was not promoted does not raise a fact issue regarding constructive discharge. See Boze, 912 F.2d at 805. Even if Harrison had shown that the failure to promote was discriminatory, which he has not, that would be insufficient to support his claim of constructive discharge because Harrison has presented no aggravating factors. See Brown, 237 F.3d at 566. Harrison was never demoted while he was employed by CISD, his salary was never reduced, he was never reassigned, he never experienced a reduction in job responsibilities, and he was never badgered, harassed, or humiliated during his employment with CISD. Defs.' App. at 128-29, 162-64. By Harrison's own admission, the work environment at CISD was not discriminatory during Harrison's term of employment. Defs.' App. at 152.

Summary judgment is thus proper for defendants on Harrison's claim of constructive discharge.

D.   Municipal Liability.

"Municipal liability under 42 U.S.C. §1983 requires proof of 1) a policymaker; 2) an official policy; 3) and a violation of constitutional rights whose 'moving force' is the policy or custom." Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 247 (5th Cir. 2003) (quoting Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001)).  As set forth above, Harrison has raised no genuine issue of material fact on his race discrimination claims, which are the only constitutional violations he alleges. Therefore he cannot raise a genuine issue of material fact under the third required element of municipal liability. See Rivera, 349 F.3d at 247.

Even if Harrison could raise such a fact issue, summary judgment would be appropriate on alternative grounds.  The only factual basis to which Harrison repeatedly cites for his municipal liability claim is the (at least) double-hearsay contained in Kaminski's declaration.  As discussed above, this hearsay is not proper summary judgment evidence. See Fed. R. Civ. P. 56(e); Warfield, 436 F.3d at 559.  Accordingly, summary judgment for defendants on Harrison's municipal liability claim is proper.

## VI.

### Order

For the reasons discussed above, the court concludes that the motions for summary judgment filed by CISD, Presley, and Tipps should each be granted.

The court ORDERS that the above-captioned action be, and is hereby, dismissed with prejudice.

SIGNED August 31, 2007.

_____
JOHN McBRYDE
United States District Judge